Sherry Yvonne MOORE, Plaintiff,

v.

CAPITOL GUIDE BOARD; Office of the Sergeant–At–Arms and Doorkeeper of the Senate; Office of the Sergeant–At–Arms of the House of Representatives; Office of the Architect of the Capitol; Committee on Rules and Administration of the Senate; Committee on House Administration of the House of Representatives; Office of the Secretary of the Senate, Defendants.

No. CIV.A. 97–823(GK).

United States District Court, District of Columbia.

Oct. 21, 1997.

Roy W. Krieger, Paleos & Krieger, P.C., Alexandria, VA, David Zachary Kaufman, Kaufman & Associates, Fairfax, VA, for Plaintiff.

Jean M. Manning, Office of Senate Chief Counsel for Employment, Jeffrey Poll, Office of House Employment Counsel, U.S. House of Representatives, Peggy Lambert, Office of Employment Counsel, Washington, DC, for Defendants.

## MEMORANDUM OPINION

KESSLER, District Judge.

This employment discrimination action arises under the Congressional Accountability Act of 1995 ("CAA"), 2 U.S.C. §§ 1301–1438 (1996). The CAA brings the employing offices of Congress under the provisions of eleven employment and nondiscrimination statutes, including Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act of 1990, and the Rehabilitation Act of 1973. 2 U.S.C. § 1302(a).

Plaintiff, a former employee of the Capitol Guide Service, claims that she is disabled and that her employers, in violation of the laws made applicable to Congress by the CAA, discriminated against her because of her disability, intimidated and retaliated against her, sexually harassed her, and constructively discharged her.

Six of the seven named Defendants have brought Motions to Dismiss, or in the Alternative, for Summary Judgment.[1] The Office of the Architect of the Capitol, the House Defendants,[2] and the Senate Defendants,[3] each argue that Plaintiff has failed to exhaust the administrative remedies provided her under the statute. Exhaustion of these remedies is a statutory prerequisite to suit. The Movants also argue that they are improper parties to the instant action, since none of them was the employing office which committed the alleged violation, or in which the

---

1. The Capitol Guide Board is the only Defendant that does not join in the Motions.

2. The "House Defendants" comprise the Office of the Sergeant-at-Arms of the House of Representatives and the Committee on House Administration of the House of Representatives (now the Committee on House Oversight, U.S. House of Representatives). Both are represented by the same counsel and have jointly filed their Motion to Dismiss.

3. The "Senate Defendants" comprise the Office of the Secretary of the Senate, the Committee on Rules and Administration of the Senate, and the Office of the Sergeant-at-Arms and Doorkeeper of the Senate. All are represented by the same counsel and have jointly filed their Motion to Dismiss.

alleged violation occurred, as required by the CAA. The Movants thus assert that Moore's action must be dismissed pursuant to Fed. R.Civ.P. 12(b)(1), for lack of subject matter jurisdiction.

Upon consideration of the Motions, Oppositions, Replies, and the entire record herein, the Court concludes that Defendants' Motions to Dismiss must be **granted.**

## I. *Background*

Plaintiff Sherry Yvonne Moore worked as an interpreter for the deaf under the supervision of the Capitol Guide Service ("CGS") from November 1994 to October 1996. (Compl. ¶¶ 4, 9.) Moore suffers from tobacco smoke-induced asthma and informed her supervisor of her condition when it was diagnosed in 1995. (Compl. ¶¶ 8–9.) Moore became pregnant in September 1995. (Compl. ¶ 35.) She complained about the tobacco smoke in her work area and in February 1996 requested that she be provided a smoke-free environment. (Compl. ¶ 38.)

Moore alleges that after she complained, she suffered continuing harassment, retaliation, and discrimination at the hands of her employer based on her sex and her alleged disability. (Compl. ¶¶ 68–74.) She states that she was eventually forced to resign her position in October 1996. (Compl. ¶ 66.)

## II. *Procedural Posture*

### A. **Exhaustion of Administrative Remedies**

The CAA establishes administrative and judicial dispute-resolution procedures for the employees and employing offices of Congress. 2 U.S.C. §§ 1401–1416. An employee must first request counseling from the Office of Compliance ("OC").[4] 2 U.S.C. § 1402. After the end of the counseling period, the employee must file a request for mediation with the OC. 2 U.S.C. § 1403. It is only after completion of mediation that the employee may elect either to file a complaint with the OC or to file a civil action in the U.S. District Court in which the employee is employed or for the District of Columbia. 2 U.S.C. § 1404.

Moore completed counseling in October 1996. (Pl.'s Consol. Opp'n Attach. C.) She completed mediation in January 1997. (Pl.'s Consol. Opp'n Attach B.) These administrative processes involved some, but not all, of the Defendants. Those who did participate included Moore, the CGS, and Jean Manning in her capacity as counsel for both the Capitol Guide Board ("CGB") and the Senate Sergeant–At–Arms. (Pl.'s Consol. Opp'n Attachs. B–C.)

Moore's completion of the administrative dispute-resolution procedures satisfied the statutory preconditions to suit with respect to those Defendants who participated in the processes. The contested issue, however, is whether Moore may properly bring suit in this Court against those Defendants who did not participate in the administrative processes below.

None of the other Movants participated in the counseling or mediation processes. Each Movant (including the Senate Defendants) claims that it received no notice of the counseling or mediation. The Movants thus argue that Moore failed to exhaust the administrative remedies with respect to them and is thus precluded by the CAA from bringing suit against them. (House Mot. at 5; Sen. Mot. at 8; Arch. Mot. at 5.)

Moore responds that the OC, not complaining employees, should be charged with the duty to identify the proper party respondents. She argues that her right to sue each of the Movants should not be circumscribed by the OC's failure to include all proper parties in the administrative procedures below. (Pl.'s Consol. Opp'n at 16–17.)

Moore also specifically denies the claim of the Senate Sergeant–At–Arms that it received no notice of her complaint nor participated in the administrative processes. Moore argues that the attorney for the Senate Sergeant–At–Arms "entered an appearance in the administrative process below on [its] behalf". (*Id.* at 15.) In support of her

---

4. Title III of the CAA created the OC, whose duties include informing individuals of their rights under the laws made applicable to Congress by the CAA and publicizing the procedures for instituting actions under the CAA. 2 U.S.C. §§ 1381–1385 (1996).

allegation, Moore produces a November 14, 1996, letter from Manning, attorney for the Senate Sergeant at Arms, to the Executive Director of the OC. The letter, which refers to a "Joint Request to Extend Mediation Period" in *"Moore vs. Senate Sergeant At Arms"*, (Pl.'s Consol. Opp'n, Attachment B), is signed by Manning as Attorney for the Senate Sergeant–At–Arms.

### B. Identification of Proper Employer–Defendant

Moore alleges that each of the named Defendants is liable under the CAA, as each had the administrative power and authority to reasonably accommodate her disability. (Pl.'s Compl. ¶ 33.) She claims that each of the Defendants was her employer within the meaning of the CAA. (Compl. ¶ 2.)

In support of this claim, Moore points to the fact that the CGS (under whose direct supervision she worked) is subject to the "direction, supervision, and control" of the CGB. 40 U.S.C. § 851(a). The CGB comprises the following Defendants: the Office of the Architect of the Capitol, the Sergeant–at–Arms of the Senate, and the Sergeant–at–Arms of the House of Representatives. *Id.* Moore reasons that, since the CGB as an entity controls the CGS by statute, its individual members also had to have controlled the terms of Moore's employment. (Pl.'s Consol. Opp'n at 14, 18.)

Moore also states that, because the Committee on Rules and Administration of the Senate and the Committee on House Administration of the House of Representatives had the authority to approve changes in her pay rate, (Compl. ¶ 17), they too controlled the terms of her employment so as to give those two Defendant Committees employer status over her.

Finally, Moore argues that because the Secretary of the Senate disburses her pay, and (along with the Sergeant–At–Arms and Doorkeeper of the Senate) maintains Senate offices during recesses of Congress, it also, under 2 U.S.C. § 1301(3)–(9), exercises employer status over her. (Pl.'s Consol. Opp'n at 6–7, 14.)

In response, the Movants argue that the CGB, the entity that directly controls and supervises the CGS, was the only entity that controlled the terms of Moore's employment, and the only entity responsible for accommodating her disability. Consequently, they reason, only the CGB would be Moore's employer under the Act and is the only proper Defendant in the instant action. (Sen. Mot. at 14–15; House Mot. at 5; Arch. Mot. at 5.) The CGB does not join in the instant Motions since it does not deny that it was Moore's employer.

Each Movant argues that Moore can bring suit under the CAA only against the employing office that committed the alleged violation, or in which the violation is alleged to have occurred. Each disputes Moore's contention that it was at any time her employing office for purposes of claims brought under the CAA. (Sen. Mot. at 6; House Mot. at 5; Arch. Mot. at 2.)

### III. *Analysis*

#### A. Statutory Preconditions to Bringing Suit under the CAA

The CAA makes eleven civil rights, labor, and workplace laws applicable to Congress. 2 U.S.C. § 1302. Title IV of the CAA sets forth the procedures that employees must follow when alleging violations of Title II, Part A of the CAA. 2 U.S.C. §§ 1401–16. As noted above, employees must first undergo counseling, then file a request for mediation. 2 U.S.C. §§ 1402–3. After the end of the mediation period, the employee may either file a complaint with the OC *or* file a civil action in the U.S. District Court in which the employee is employed or for the District of Columbia. 2 U.S.C. § 1404.

Section 1408(a) of the CAA grants U.S. district courts jurisdiction over only those civil actions brought by covered employees seeking "redress for a violation *for which the employee has completed counseling and mediation.*" 2 U.S.C. § 1408(a) (emphasis added).

█ It is clear that Moore failed to include the House Defendants or the Office of the Architect of the Capitol in the counseling or mediation sessions into which she entered

pursuant to the CAA. Moore argues that the OC, not Moore herself, had a duty to identify the proper respondents. (Pl.'s Consol. Opp'n at 16.) Nothing in the provisions of the CAA that establish the OC and describe its duties, however, supports this argument. 2 U.S.C. § 1381(h). Absent any indication that the framers of the CAA intended the OC to bear such a duty, this Court will not read that duty into the statute's provisions.

Plaintiff's failure to notify and include the House Defendants or the Office of the Architect of the Capitol in the administrative dispute-resolution procedures set forth in Title IV of the CAA precludes their inclusion as Defendants in the instant action. This Court has no jurisdiction over these Defendants in this action under 2 U.S.C. § 1408(a), and must dismiss the action with respect to them. F.R.C.P. 12(b)(1).

■ As to the remaining Defendants, the identity of the party or parties with whom Moore did enter into mediation is not clear. The November 14, 1996 letter from Jean Manning, attorney for the Senate Defendants and the CGB, to the Executive Director of the OC refers to the mediation as *"Moore v. Senate Sergeant–At–Arms"*. (Pl.'s Consol. Opp'n Attach. B.) The OC, in an October 18, 1996 Notice to Moore, names the Sergeant–At–Arms and Doorkeeper of the Senate as Moore's employing office (Pl.'s Consol. Opp'n Attach. C). The Senate Sergeant–At–Arms, however, denies that it knew of or participated in the administrative dispute-resolution procedures. (Sen. Mot. at 8.)

Thus, the factual record is unclear, not only as to whether the Senate Sergeant–At–Arms received notice of Moore's complaint, but also as to whether it participated, through its attorney, in the administrative dispute-resolution procedures. Consequently, the Court will not dismiss the action for lack of jurisdiction with respect to the Senate

Sergeant–At–Arms pursuant to 2 U.S.C. § 1408 (a).

## B. Parties Against Whom Plaintiffs May Bring Suit Under the CAA

■ Movants also argue that Moore may bring suit under the CAA only against her employing office, that the CGB is Moore's only employing office, and that she is therefore precluded from bringing her claim against all Defendants except the CGB.

Section 1408(b) permits a "covered employee" to bring suit under the CAA only against "the employing office alleged to have committed the violation, or in which the violation is alleged to have occurred." 2 U.S.C. § 1408(b).

■ The statute specifically lists nine entities that may be an "employer", including the House of Representatives, the Senate, the Capitol Guide Service and the Office of the Architect of the Capitol. 2 U.S.C. § 1301(3)(A)–(C). An individual may be a "covered employee" of only one of these named nine employers.[5] Moore claims that she was an employee of each of the named Defendants.

The language of the CAA, however, precludes the Court from accepting Moore's expansive interpretation of "employer" and "employee" for the following reasons:

First, Title I explicitly excludes employees of the CGS from its definition of employees of the House of Representatives or the Senate. 2 U.S.C. §§ 1301(7)–(8). Moore, as an employee of the CGS, thus cannot also be considered an employee of the House of Representatives or the Senate. Second, the Act implicitly excludes employees of the CGS from its definition of employees of the Office of the Architect of the Capitol. It includes in that definition only employees of the Office of the Architect itself, employees of the Botanic Garden, and employees of the Senate Restau-

---

**5.** The Movants rightly claim that, as a matter of statutory construction, the language of the statute requires an employee filing a claim in District Court to bring suit against the single employing office responsible for the alleged violation. *See, e.g., In Re Espy,* 80 F.3d 501, 505 (D.C.Cir.1996), *citing Reiter v. Sonotone Corp.,* 442 U.S. 330, 339, 99 S.Ct. 2326, 2331, 60

L.Ed.2d 931 (1979) (a statute written in the disjunctive is generally construed as setting out separate and distinct alternatives). It is illogical to construe the statute in such a way that an employee may force any number of employing offices, however tangentially related to the employee's claim, to defend a suit in District Court.

rants. 2 U.S.C. § 1301(5). Again, as an employee of the CGS, Moore cannot be considered an employee of the Office of the Architect of the Capitol.

Moore thus cannot be considered an employee of any of the House or Senate Defendants, nor of the Office of the Architect of the Capitol. Under the CAA, Moore satisfies only the definition of an employee of the CGS. 2 U.S.C. § 1301.

As a "covered employee" of the CGS, Moore must bring suit against the employing office which committed the alleged violation, or in which the alleged violation occurred. 2 U.S.C. § 1408(b).

■ The Act lists the CGB, not the CGS, as an "employing office". 2 U.S.C. § 1301(9)(D). Since the CGS and its employees operate under the direction and control of the CGB (40 U.S.C. § 851), it is logical to conclude that the CGB is the "employing office" of the CGS under the Act.

Moore also argues that, since the statute provides that the CGB controls the CGS, each individual member of the CGB controlled the terms of Moore's employment and therefore each individual member was her "employing office" under the Act. (Pl.'s Consol. Opp'n at 14, 18.) Moore's understanding of the relationship between the CGB, its individual members, and the CGS is inaccurate. It is only the CGB *as an entity* that controls the CGS and the terms of employment of CGS employees. The individual members of the CGB have no independent authority or control over the CGS.[6] Consequently, the individual members of the CGB are not Moore's "employers" or "employing office" under the Act.[7]

In sum, since Moore is not an "employee" of any of the Movant Defendants, she cannot be a "covered employee" with respect to them, nor can they be considered to be her "employing office". Moore has thus incorrectly named each of the Movants as a De-

fendant to the instant action, pursuant to Section 1408(b). Consequently, the suit as to those Defendants must be dismissed under F.R.C.P. 12(b)(6), for failure to state a cause of action.

## IV. Conclusion

For the reasons stated above, Defendants' Motions to Dismiss shall be **granted.**

---

6. At oral argument, Plaintiff offered no response to Defendant's argument that the CGB acts only as a single institutional entity.

7. It is true that the OC, in an October 18, 1996 Notice to Moore, did name the Sergeant–At–Arms and Doorkeeper of the Senate and the CGS as Moore's employing offices. (Pl.'s Consol.

Opp'n Attach. D.) None of these entities is Moore's employing office under the language of the Act. The inaccurate characterization of the status of the three entities by the OC cannot, of course, overcome the plain meaning of the statutory language.